(No. 1932—

JOSEPH CRAWFORD, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed June 1, 1935.*

JOHN A. MAYHEW, for claimant.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

MR. JUSTICE LINSCOTT delivered the opinion of the court:

Under date of December 29, 1931, the claimant was working at a State hospital located at Manteno, Illinois, and had been employed continuously there since October 20, 1931. He had been employed at odd jobs and on the said 29th day of December, 1931, he was engaged in hauling brick-bats for the purpose of building hard roads on the grounds of the Manteno State Hospital, which roads connected the different buildings. On the day in question, he was driving a team and the brick-bats were hauled some four or five miles. The team ran away; his left leg was broken in three places and his right leg was broken in two places. It is charged that his left side of his face became paralyzed, causing the loss of his left eye, and almost a total loss of the hearing of his left ear, and he claims total incapacity.

Claimant's wife was also employed at the same hospital; and there were no children under sixteen years of age; that he was 61 years old at the time of the accident and received $55.00 per month and his board and room. The value of his board and room was fixed at $24.00 per month. He received one month's pay after the injury and his hospital and doctor's bills.

At the hospital, they have about twenty-two complete buildings. Some of the buildings have fire escapes and are heated from a central power plant, which contains, boilers, pumps, hot water heaters, and all necessary equipment for boiler plant; they also use electric motors. There is a deep well which furnishes all water for the institution, and is operated by a 75 horse power motor. They also operate a laundry at the institution. The washing machine is motor driven, and considering the nature of the work being done at the time the claimant received his injury and the nature of the plant, we are of the opinion that this employment comes under the Compensation Act, and we are further of the opinion that the injury arose out of and in the course of the employment.

At the time of the injury, claimant was driving a team hauling brick-bats and the team ran away.

Claimant was discharged from the hospital in April, 1932.

When he first went to the hospital he had blood poisoning in his leg and was in the hospital all told 15 weeks on account of the blood poisoning and the fracture sustained. He was treated by Dr. Golmar at Manteno and was then taken to the hospital at Kankakee and was seen there by doctors Madden, Hawthorne & Morrow. He had been employed in various State institutions about three years and had been employed as a hard road inspector in Massac County and was an auctioneer by occupation.

Dr. E. C. Wilson, a physician and surgeon testified that he found that claimant had some edema of the feet and legs, some inflammatory condition of his kidneys; high blood pressure; a dilated heart; difficulty in breathing; a hernia; was a little hard of hearing at times; a tremor,—shakiness of his hands,—and X-ray pictures show a fracture of the left tibia at the ankle. The left tibia is the large bone that goes from

the knee to the ankle. The X-rays also show a fracture of the first and third metatarsal bones of the right foot, and also a fracture of the left fibula, about the middle third—that is a small bone of the leg—from the knee to the ankle. He obtained good results from the healing of the fractures. He has a dilated heart and what doctors call myocarditis, an inflammation of the heart and muscles, and this is a permanent condition. This causes his feet to swell. Claimant was also suffering from Parkinson's disease, and prior to the time of his injury, he was healthy and doing hard work, and his present condition developed since his injury. He was also suffering from a kidney ailment, brought about according to Dr. Wilson, from his heart condition. At the time that claimant sustained his injury, he had a skin abrasion and infection developed there.

Claimant had never suffered an injury before and testified that he had taken out life insurance about six months prior to that time in the Illinois Bankers Life Insurance Company, and received a thorough medical examination at that time.

The first question presented is whether from the setting in of infection, with nothing definite to show to what the infection is due or when or where it started, the injury could be considered as having been caused by an accident in the sense contemplated by the Workmen's Compensation Act; whether the circumstances are such that the injury can be traced to a definite time, place and cause, as was held necessary in *Matthiessen & Hegeler Zinc Co.* vs. *Industrial Board,* 284 Ill. 378.

In the present case the claimant received definite injuries consisting of several fractures and an abrasion of the skin, but for the abrasion of the skin there would have been no means of access by the infectious germs to the blood. We are of the opinion that the particular work gave rise to the occasion or opportunity for exposure to the infection. There was no attempt in the record to trace the source of the germs, to show whether the actual infection took place at the time of the accident. The history of this case is one where the claimant had good health and did hard labor prior to the accident. It could be considered a reasonable inference that infectious germs are so prevalent as to justify the assumption

that the infection took place at the time of the injury and the germs entered the skin through the abrasion shown by the evidence.

We are of the opinion that it is entirely possible for the infection to have resulted from the accident and the evidence supports this finding. This decision may be justified upon the ground that there had been a definite accident originally which reasonably could have caused the infection in or near the skin abrasion.

The earnings of the claimant were $948.00 per year, and the average weekly wage was $18.23 per week; the claimant at the time of the injury was 61 years of age and had no children under sixteen years of age, and we find that the claimant is wholly incapable of work. An award is, therefore, recommended.

If the appropriation is made by the Legislature, three years and six months will have elapsed before these payments are available on July 1, 1935. The total award he is entitled to is the sum of $3,792.00. One-half of his weekly wage of $18.23 per week is $9.12 per week. One-half of his weekly payments, therefore, have accumulated for three years and six months, or 182 weeks, since the time of the injury, but he was paid for one month, or $79.00, which leaves the amount accumulated as $1,580.84, and the balance should be paid to him weekly but because that it not practical with the Legislature meeting only every two years, we recommend a lump sum settlement and commute the said balance to an equivalent lump sum, which commutation shall be an amount which will equal the total sum of the probable future payments capitalized at their present value upon the basis of interest calculated at three per centum per annum with annual rests. This equals the sum of $1,997.67. This amount added to the sum of $1,580.84, which will be due as of July 1 of this year, makes a total of $3,578.51, which is the sum that we recommend that the Legislature appropriate to Joseph Crawford. The court continues the case on its own motion for such further orders as it may deem necessary under the Workmen's Compensation Law.